TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
DAVID H. CHAO (Cal. Bar No. 273953)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4586
     Facsimile: (213) 894-0141
     E-mail:   david.chao@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 17-194-SVW-2 |
|---|---|
| Plaintiff, | <u>GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING FACTORS REGARDING DEFENDANT ROBERT WAGGONER; DECLARATION OF SA JOSEPH ROCK; EXHIBIT</u> |
| v. | |
| ROBERT WAGGONER, | |
| Defendant. | Hearing Date: August 16, 2021<br>Hearing Time: 11:00 a.m.<br>Location:    Courtroom of the Hon. Stephen V. Wilson |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney David H. Chao, hereby files its position with respect to sentencing factors for defendant ROBERT WAGGONER.

///

///

///

This sentencing position is based upon the attached memorandum of points and authorities, attached declaration and exhibit, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 2, 2021               Respectfully submitted,

                                            TRACY L. WILKISON
                                            Acting United States Attorney

                                            SCOTT M. GARRINGER
                                            Assistant United States Attorney
                                            Chief, Criminal Division


                                                      /s/
                                            DAVID H. CHAO
                                            Assistant United States Attorney

                                            Attorneys for Plaintiff
                                            UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                              <u>PAGE</u>

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.     INTRODUCTION...................................................1

II.    OFFENSE CONDUCT................................................1

III.   GUIDELINES CALCULATION.........................................3

       A.    Presentence Report.......................................3

       B.    Loss.....................................................3

       C.    Sophisticated Means......................................4

       D.    Aggravating Role.........................................4

       E.    Restitution..............................................5

IV.    THE GOVERNMENT'S SENTENCING RECOMMENDATION.....................5

       A.    The Nature and Circumstances of the Offense, the
             Seriousness of the Offense, and the Need to Provide
             Just Punishment Warrant a Substantial Term of
             Imprisonment.............................................5

       B.    The Need for Deterrence Also Supports a Substantial
             Custodial Sentence.......................................6

       C.    The History and Characteristics of Defendant Support
             the Government's Recommended Sentence....................7

V.     CONCLUSION.....................................................8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant Robert Waggoner ("defendant") co-directed a complex benefits fraud scheme involving more than 100 veterans that defrauded the U.S. Department of Veterans Affairs ("VA") out of more than $4 million.  For this conduct, defendant pleaded guilty to five counts of wire fraud, in violation of 18 U.S.C. § 1343, pursuant to a plea agreement.  (Plea, Dkt. 74.)

In its Presentence Report ("PSR"), the United States Probation Office ("USPO") determined that defendant's total offense level under the United States Sentencing Guidelines (the "Guidelines" or "USSG") is 27 and his criminal history category is I, yielding an imprisonment range of 70 to 87 months.  (PSR, Dkt. 99.)  Applying the equivalent of a four-level downward variance, the USPO recommended that the Court sentence defendant to a term of imprisonment of 48 months.  (Dkt. 98.)

The government concurs with the USPO's Guidelines calculation but disagrees with the recommended variance.  As explained more fully below, the government asks that the Court impose a sentence of 70 months' imprisonment, a three-year period of supervised release, a special assessment of $500, and order defendant to pay restitution in the amount of $4,197,861.68.

**II.  OFFENSE CONDUCT**

Defendant was the Vice President of Alliance School of Trucking ("AST"), an organization that purported to provide truck driving courses to veterans eligible for education benefits under the Post-9/11 GI Bill.  Between 2011 and 2015, defendant and co-defendant Emmit Marshall -- president of AST -- orchestrated a scheme to

defraud the VA. By intentionally misrepresenting its student attendance, AST obtained tuition payments from the VA on behalf of veteran-students that never actually attended classes at AST. (PSR ¶¶ 13-25.)

Defendant played an integral role in this elaborate scheme. Specifically, defendant and his co-schemers convinced veterans to enroll with AST by telling them they were entitled to VA education benefits, even if they did not attend AST classes. (PSR ¶ 22.) More than 100 veterans enrolled with AST to accept education benefits for housing while AST collected the benefits for tuition. (PSR ¶¶ 15, 25). Initially the veterans filled out the enrollment paperwork and provided it to defendant for submission to the VA, but as the scheme progressed, defendant began fabricating paperwork for the veterans. (PSR ¶ 23; Plea, Ex. A ¶ f.) In some instances, defendant also forged veterans' signatures on the paperwork without permission. (See Dkt. 59-1 (Co-schemer 2 Proffer) at 43-45, 51.) Defendant, who was a Certifying Official for AST, personally submitted and certified fraudulent enrollment paperwork to the VA, falsely claiming that courses were provided to enrolled veterans, when in fact, as he knew, the vast majority of the students did not attend these classes. (PSR ¶¶ 19, 24; Plea, Ex. A ¶ g-h.)

To attempt to conceal the scheme, defendant and his co-schemers directed the veterans enrolled at AST to falsely tell VA auditors and federal investigators that they had attended the AST courses. (PSR ¶¶ 24, 40; Plea, Ex. A ¶ i.) Defendant also aided his co-schemers in the destruction of AST records once they became aware that they were being investigated. (See Case 2:17-CR-127, Dkt. 72 (Co-schemer 2 PSR) ¶ 32.)

In total, defendant and his co-schemers, operating through AST, defrauded the VA out of approximately $4,197,861.68 in education benefits intended for 108 veterans who were purportedly enrolled at AST, all of whom never attended any AST classes. (PSR ¶¶ 25-26; Plea, Ex. A at 5; Declaration of FBI SA Joseph Rock ("Rock Decl.") ¶ 7, Ex. A.)

### III. GUIDELINES CALCULATION

#### A. Presentence Report

In the PSR, the USPO calculated a total offense level of 27 based on the following:

| | | |
|---|---|---|
| Base Offense Level | 7 | U.S.S.G. § 2B1.1(a)(2) |
| Specific Offense Characteristics: | | |
| Loss ($3.5M - $9.5M) | +18 | U.S.S.G. § 2B1.1(b)(1)(J) |
| Sophisticated Means | +2 | U.S.S.G. § 2B1.1(b)(10)(C) |
| Adjustments | | |
| Aggravating Role | +3 | U.S.S.G. § 3B1.1(a) |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1(a), (b) |
| TOTAL | 27 | |

Based upon a total offense level of 27 and a Criminal History Category of I, the USPO calculated a Guidelines imprisonment range of 70-87 months. (PSR ¶ 94.) As discussed in detail below, the government concurs with the USPO's Guidelines calculation, but objects to the USPO's recommended variance.

#### B. Loss

The USPO correctly found that an 18-level enhancement under U.S.S.G. § 2B1.1(b)(1)(J) applies. (PSR ¶ 25.) The calculated loss of approximately $4,197,861.68 is supported by (1) defendant's plea

3

agreement (Plea, Ex. A at 5) and (2) the uncontroverted record (Rock Decl. ¶ 7, Ex. A).  The USPO applied the same enhancement to defendant's co-schemers based on approximately the same loss figure. (See Dkt. 103 (Co-schemer 1 PSR) ¶ 37; Co-schemer 2 PSR ¶ 42.)

### C. Sophisticated Means

The government concurs with the application of a two-level enhancement because the offense involved sophisticated means. Application Note 9(B) to section 2B1.1(b)(10) describes sophisticated means as "intricate offense conduct pertaining to the execution and concealment" of the scheme.  For example, it notes that locating the main office of the scheme in one jurisdiction, while soliciting in another jurisdiction, indicates sophistication.

Here, defendant and his co-schemers managed the scheme from California, but recruited veteran-students from numerous states, including California, New Jersey, Hawaii, Pennsylvania, and Texas. (PSR ¶ 40.)  In addition, the scheme involved fabricating enrollment records for hundreds of students, maintaining those fake records to pass VA inspections, and coordinating with the enrolled veterans to obtain education benefits fraudulently and later to conceal the scheme by lying to VA investigators.  (PSR ¶¶ 24, 40.)  The USPO correctly applied this enhancement to defendant and his co-defendant. (PSR ¶¶ 39-42; Co-schemer 1 PSR ¶¶ 38-41.)

### D. Aggravating Role

The government agrees with the application of a three-level adjustment to reflect defendant's leadership role in the scheme. Pursuant to USSG § 3B1.1(a), a three-level upward adjustment is appropriate if the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more

4

participants or was otherwise extensive. Here, defendant was the Vice President, co-director, and Certifying Official of AST. (PSR ¶¶ 19, 45.) The scheme implicated defendant, two convicted co-schemers, other AST staff, and more than 100 veterans, many of whom have been criminally charged at the state level. (PSR ¶¶ 15, 25 n.1, 45.) Defendant helped hire Co-schemer 2 to work at AST and helped recruit veterans to carry out the fraud. (PSR ¶¶ 21, 45.) Defendant supervised Co-schemer 2 and the office manager. (PSR ¶ 45.) Given these undisputed facts, defendant's managerial role in the scheme warrants a three-level upward adjustment.

### E. Restitution

The government concurs with the USPO's position that restitution should be ordered in this case pursuant to 18 U.S.C. § 3663A. (PSR ¶ 106.) In light of a recent correction provided by the VA, the government believes the correct restitution amount should be a slightly lower amount of $4,197,861.68. (Rock Decl. ¶ 7, Ex. A.)

## IV. THE GOVERNMENT'S SENTENCING RECOMMENDATION

The significant financial harm caused by defendant's fraudulent scheme, the need to punish defendant for his conduct, and the need to send a firm message of deterrence to defendant and others in his position, call for a significant term of incarceration. The government recommends that the Court impose a sentence of 70 months' imprisonment.

### A. The Nature and Circumstances of the Offense, the Seriousness of the Offense, and the Need to Provide Just Punishment Warrant a Substantial Term of Imprisonment

The VA's mission under the Post-9/11 GI Bill was to provide education benefits to veterans attempting to better themselves and reintegrate into society by learning a trade. Defendant, who is

himself a veteran, had an opportunity to advance this mission when he joined AST. Instead, he decided to exploit this government assistance program and to enrich himself and his confederates by stealing taxpayer dollars intended to help veterans in need of education. Defendant's actions inflicted a loss of more than $4 million upon the VA.

Defendant's conduct was not a crime of opportunity or a momentary lapse of judgment, but an elaborate and sustained fraud on the government he once served. For over two years, as director and Certifying Official for AST, defendant supervised the main recruiter and the office manager. (PSR ¶ 45.) Defendant was also involved in the details of the fraudulent scheme, fabricating enrollment records, submitting false documents to the VA, and helping to conceal the fraud from investigators. (PSR ¶¶ 24, 40; Co-schemer 2 Proffer at 44-45.) In sum, defendant's active leadership at AST enabled a widespread, years-long abuse of federal resources meant for the education of veterans. A substantial sentence is warranted to reflect the seriousness of the offense and to promote respect for the law.

### B. The Need for Deterrence Also Supports a Substantial Custodial Sentence

A significant custodial sentence is also necessary to afford adequate deterrence to defendant and to others generally. The elaborate and expansive nature of this offense suggests defendant has little regard for the rule of law. The need for general deterrence is particularly germane because the country now finds itself in a climate in which scams involving federal funds continue to proliferate. Unless offenders see that they will face meaningful

custodial sentences for such crimes, they will be emboldened to continue to take advantage of federal benefits programs. A robust sentence is needed to afford adequate deterrence and preserve the integrity of such benefits programs.

### C. The History and Characteristics of Defendant Support the Government's Recommended Sentence

It is both commendable and yet troubling that defendant is a veteran who served in the United States Army for nine years and later worked for the United States Court of Appeals for the Ninth Circuit for 18 years. (PSR ¶¶ 81, 83.) While defendant's service to the country is somewhat mitigating, someone with defendant's background in the military and justice system ought to have been acutely aware of the impropriety and consequences of his actions.

The government acknowledges that there are certain other mitigating factors in this case. Defendant, who is 57 years old, was diagnosed with pancreatic cancer in March 2019, and was scheduled to have surgery in September 2020 to remove a tumor. (PSR ¶ 74.) Defendant also suffers from chronic pain, high blood pressure, and asthma. (PSR ¶ 75.) Although his two children are adults and his wife appears to be financially independent, the emotional impact of defendant's incarceration on his family is a mitigating factor, particularly given his declining health.

Another mitigating factor is that the loss enhancement is arguably overstated. The USPO has recommended an 18-level enhancement based on the calculated loss of $4.1 million. While the calculation is correct, defendant's personal profit from the scheme, which principally consisted of his salary totaling about $108,000 over three years (PSR ¶ 80), was far less than the $4.1 million loss

7

for which he is being held accountable under the guidelines. While this is no small sum, the Court might fairly conclude that applying this enhancement results in an offense level that overstates defendant's culpability.

Notwithstanding these mitigating factors, the government believes the 48-month sentence recommended by the USPO fails to adequately address the harm, complexity, and duration of the offense. Although a 70-month sentence for defendant would be longer than the sentence that co-defendant Marshall received (48 months), there are legitimate reasons for this difference, including Marshall's family circumstances and his substantial assistance to the government. Therefore, sentencing defendant Waggoner to a longer custodial term would not give rise to any sentencing disparity because defendant and Marshall are differently situated.

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court impose a sentence of 70 months' imprisonment, three years of supervised release, a special assessment of $500, and $4,197,861.68 in restitution.